THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| AMAR MILJKOVIC,<br>　　　　　　　Plaintiff,<br><br>v.<br><br>BRIAN REDD, Acting Executive Director, Utah Department of Corrections; ROBERT POWELL, Warden, Utah State Correctional Facility; BRIAN NIELSON, former Executive Director, Utah Department of Corrections; LELAND MCCLURE, Correctional Officer and JOHN DOES 1-10,<br><br>　　　　　　　Defendants. | **MEMORANDUM DECISION AND DISMISSAL ORDER**<br><br>Case No. 2:23-cv-00526-JNP-DBP<br><br>District Judge Jill Parrish |

Plaintiff Amar Miljkovic asserts claims under § 1983 alleging that Defendants allowed a brutal assault against him by inmates to occur at the Utah State Correctional Facility, in violation of his Eighth Amendment right to be free from cruel and unusual punishment. *See* 42 U.S.C.S.§ 1983 (2024). Defendants move to dismiss the Amended Complaint arguing that it fails to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6).

For the reasons below, Defendants' Motion to Dismiss is GRANTED.

I.　　BACKGROUND

Plaintiff Amar Miljkovic was an inmate incarcerated at the Utah State Correctional Facility, which is operated by the Utah Department of Corrections. Defendant Brian Redd is the current Acting Executive Director of the Utah Department of Corrections. Mr. Redd, however, was not employed by the Utah Department of Corrections in November 2022, the time period at issue in this case. Defendant Brian Nelson was the past Executive director of the Utah Department

of Corrections. Defendant Robert Wall was the warden at the Utah State Correctional Facility, and Defendant Leland McClure was a correctional officer there.

The Utah State Correctional Facility began operations in July 2022 and, by all accounts, was severely understaffed. Correctional officers were required to work significant overtime, and law enforcement officers with no corrections experience or training were used to fill gaps in staffing at the prison. Reports of inmate assaults within the facility began increasing shortly after the facility's opening.

The Utah State Correctional Facility has different classes of inmates in cell block A, the high security area of the facility. This includes "modified monitor" inmates who reside in upper tier cells, and gang members, who reside in lower tier cells. "Modified monitor" inmates are those inmates who have renounced gang affiliations. On at least two occasions in November 2022, prison guards opened the cell doors on the lower tiers while cell doors in the upper tiers were open. Plaintiff alleges that these incidents were known by prison staff and that it placed the upper tier cell residents in grave danger as they were accessible to the gang members with whom they had disassociated.

On November 19, 2022, Plaintiff had the responsibility of passing out food trays while the lower tier inmates were locked in their cells. Plaintiff alleges correctional officers had left the unit as Plaintiff was delivering food and that Defendant McClure incorrectly and mistakenly began unlocking cells on the lower tier from the control room. Multiple gang members rushed out of their cells and began attacking Plaintiff, repeatedly stabbing him. Plaintiff was eventually extracted by correction officers and sent to the hospital where he suffered permanent damage to his eye. In the post-incident report, McClure indicated that it was his first time at the facility and that he was still familiarizing himself with its procedures.

## II.     PLEADING REQUIREMENTS

When assessing a complaint for failure to state a claim upon which relief may be granted, the court takes all well-pleaded factual assertions as true and regards them in a light most advantageous to the plaintiff. *Ridge at Red Hawk L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). However, dismissal is appropriate when the plaintiff has not plead facts sufficient to pose a "plausible" right to relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[T]he complaint must contain something more than 'unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Eaves v. Kory*, No. 24-1048, 2024 U.S. App. LEXIS 12964, at *2-3 (10th Cir. May 30, 2024) (unpublished) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678(2009)). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins*, *Robbins v. Okla. ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1249-50 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "Facts, not conclusions, must be pleaded – 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions,' including where a 'legal conclusion [is] couched as a factual allegation.'" *Renaud v. Ross*, No. 1:22-CV-212, 2023 U.S. Dist. LEXIS 19808, at *8 (D. Wy. Jan. 27, 2023) (quoting *Iqbal*, 556 U.S. at 678) (alteration in original). In other words, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk,* at 1177 (italics in original).

### III.   SECTION 1983 DOES NOT SUPPORT CLAIMS AGAINST DEFENDANTS IN THEIR OFFICIAL CAPACITIES.

Plaintiff's Amended Complaint states that the Defendants are being sued in both "their individual and official capacities." (ECF No. 14, at 2.)

State officials acting in their official capacities are not normally amenable to suit under § 1983. Section 1983 provides for remedy against a "person" who acts "under color of state-law" to deprive someone of a federal right. 42 U.S.C. § 1983. However, the United States Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."); *Howlett v. Rose*, 496 U.S. 356, 365 (1989) ("*Will* establishes that the State and arms of the State, which have traditionally enjoyed Eleventh Amendment immunity, are not subject to suit under § 1983 in either federal court or state court.").

The Supreme Court has recognized a narrow exception to this rule. *Buchwald v. University of N.M. Sch. of Med.*, 159 F.3d 487, 495 (10th Cir. 1998) (citing *Ex parte Young*, 209 U.S. 123, 160 (1908)). To qualify for the exception,

> [f]irst, there must be an "ongoing violation of federal law." Second, "it applies only to prospective relief" and may not be used to obtain a declaration that a state officer has violated a plaintiff's federal rights in the past. Finally, it "has no application in suits against the States and their agencies, which are barred regardless of the relief sought."

*Buchwald*, 159 F.3d at 495. The Supreme Court has expressly declined to extend the exception to suits for retrospective relief. *Green v. Mansour*, 474 U.S. 64, 68 (1985). Further, in cases involving the administration of prisons, the United States Supreme Court has warned district courts to approach the issuance of injunctive relief with caution, lest they become unnecessarily "enmeshed

in the minutiae of prison operations." *Farmer v. Brennan*, 511 U.S. 825, 846 (1994) (quoting *Bell v. Wolfish*, 441 U.S. 520, 523 (1979)).

Plaintiff's claims against Defendants in their official capacities do not qualify for the exception to the rule exempting state officials acting in their official capacities from suit under § 1983. First, Plaintiff's suit seeks damages associated with an isolated assault rather than an ongoing violation of federal law. Second, Plaintiff has not requested any injunctive relief other than that which might fall under the boilerplate prayer "[f]or such other equitable relief as is warranted by the circumstances." (ECF No. 14, at 9.) Therefore, Plaintiff's claims against Defendants in their official capacities must be dismissed.[1]

### IV. SECTION 1983 DOES NOT SUPPORT CLAIMS AGAINST DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES.

When a plaintiff sues multiple defendants, the court must evaluate the sufficiency of a plaintiff's allegations by reviewing each cause of action against each individual defendant. "[I]t is particularly important in such circumstances that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Robbins v. Okla. ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1249-50 (10th Cir. 2008) (emphasis in original) (citing *Twombly*, 550 U.S. at 565 n.10). "Individual liability under § 1983 must be based on

---

[1] Plaintiff cites *Lopez v. LeMaster*, 172 F.3d 756 (10th Cir. 1999) (*abrogated on other grounds*), for the proposition that an official may be held liable in his official capacity for deliberate indifference to inmate health and safety. (ECF No. 19, at 9.) However, *Lopez* involves a county official, not a state official. While local governing bodies may be sued under § 1983, states and their agencies may not. *Compare Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("neither a State nor its officials acting in their official capacities are 'persons' under § 1983"), *with Monell et al v. Dept. of Soc. Serv.*, 436 U.S. 658 (1978) ("Local governing bodies, therefore, can be sued directly under § 1983 … where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.").

personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997)).

### A. Plaintiff Fails to State a Claim Against Brian Redd, Acting Director of the Utah Department of Corrections.

Defendants move to dismiss the claim against Mr. Redd, the acting Executive Director of the Department of Corrections, arguing that he could not have had any personal involvement in the alleged constitutional violation because he was not employed by the Department of Corrections at the time of the attack. Plaintiff concedes that Mr. Redd was not employed by the Department of Corrections at the time of the attack. Nevertheless, Plaintiff argues that Mr. Redd should remain a defendant because he is "currently in charge of the prison and would be responsible for implementing any injunctive relief ordered by the Court, making him a proper party to the lawsuit." *Id.* at 9-10.

Plaintiff has not offered any authority for the proposition that a defendant who was not personally involved in an alleged constitutional violation may be held responsible in his personal capacity. Furthermore, although Plaintiff argues that Mr. Redd would bear the responsibility to implement any injunctive relief, Plaintiff has not requested any such relief. Even if he had, responsibility to implement injunctive relief would presumably devolve to Mr. Redd solely in his official capacity. Therefore, the court finds that Plaintiff fails to state a claim against Mr. Redd in his individual capacity.

### B. Plaintiff Fails to State a Claim Against Corrections Officer Leland McClure.

Plaintiff alleges that Officer McClure violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment by opening the lower tier doors of cell block A, thereby exposing him to attack by gang members. Plaintiff's allegations, however, do not meet the standard for relief under § 1983.

The Eighth Amendment demands that carceral officials provide humane conditions of confinement informed by "contemporary standards of decency." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). "Under the Eighth Amendment, jail officials must provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." *McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001) (citation omitted). Prison officials have a duty to protect inmates from assault by other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (citations omitted.) However, prison officials are not constitutionally liable for every failure to prevent an injury to a prisoner at the hands of another. *Id*. at 834. Establishing that the Prison officials are constitutionally liable for an inmate attack requires a plaintiff to make two showings: first, that he was incarcerated under conditions posing a substantial risk of serious harm, and second, that the officials acted with deliberate indifference to inmate health and safety. *Id*.; *Shipps v. Groves*, 2023 U.S. App. LEXIS 10781, *4 (10th Cir. 2023) (citing *Estelle*, 429 U.S. at 105-06).

"[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer,* at 835. The Supreme Court has clarified that acting with "deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836 (1994). "It is obduracy and wantonness, not inadvertence or error in good faith . . . ." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Deliberate indifference requires that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* at 837. Put another way, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause of commendation, cannot under [Supreme Court] cases be condemned as the infliction of punishment." *Id.* at 838. For example, it could be that prison officials "did not know of the

underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Id.* at 844. Plaintiff must allege the defendants' subjective "awareness" of the substantial risk. *Id.* at 848. Finally, conclusory allegations "couched as factual allegations" are not entitled to the presumption of truth. *Renaud v. Ross*, 2023 U.S. Dist. LEXIS 19808, at *8 (quoting *Iqbal*, 556 U.S. at 678) ("Facts, not conclusions, must be pleaded – 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions,' including where a 'legal conclusion [is] couched as a factual allegation.'")

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

> The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Id.* (internal citations omitted).

The Amended Complaint alleges that severe staffing shortages forced correctional officers to work significant overtime and law enforcement officers with no corrections experience or training were being used to fill gaps in staffing at the prison. (ECF No. 14, at 4.) Plaintiff further alleges that "reports of assault began increasing shortly after the new facility opened, some of which required hospitalizations of inmates and/or corrections officers." *Id*. at 4-5. Finally, Plaintiff alleges that on at least two prior occasions, the lower tier cells in cell block A were opened at the

same time as the upper tier cells were open, causing potential harm to the upper tier residents who were "modified monitor" inmates. *Id*. at 6.

Plaintiff alleges that Officer McClure himself incorrectly opened the lower tier cells on November 19, 2022, which directly led to Plaintiff's assault. By Officer McClure's own admission, Plaintiff alleges Officer McClure was "only beginning the process of familiarizing [himself] with the section operations and procedures of the facility." *Id*. at 6-7.

Even when viewed in the light most favorable to Plaintiff, the factual allegations in the Amended Complaint, while consistent with Defendants' liability, fall short of establishing a plausible entitlement to relief. *See Iqbal*, at 678. Crucially, Plaintiff has failed to adequately plead facts suggesting that Officer McClure acted with deliberate indifference, akin to criminal recklessness, when he opened the lower tier doors.

At most, Plaintiff's allegations suggest negligence. Plaintiff makes no factual allegation to support the conclusion that Officer McClure acted with "obduracy and wantonness, not inadvertence or error in good faith" when he opened the lower tier doors instead of the upper tier doors. *See Whitley v. Albers*, 475 U.S. at 319. According to the Amended Complaint, Officer McClure "incorrectly began opening the bottom tier cell doors when, in fact, the top tier should have been opened instead." (ECF No 14, at 7.) Officer McClure explained that he opened the wrong doors because he was unfamiliar with the controls. *Id*. Finally, even if Officer McClure should have perceived the possibility of a substantial risk from improperly opening the doors, an official's failure to act on a risk he should have perceived but did not is insufficient to establish deliberate indifference. *See Farmer,* at 838. Thus, Plaintiff fails to state a claim upon which relief can be granted under § 1983 as to Officer McClure.

### C.   Plaintiff Fails to State a Claim Against Warden Robert Powell or (Former) Executive Director Brian Nielson.

Plaintiff alleges that Warden Powell and former Executive Director Nielson violated his Eighth Amendment rights by their failure to adequately train and supervise their subordinates to prevent and respond to the attack. (ECF No. 14, at 7-8.) However, Plaintiff's allegations against Defendants Powell and Nielson fall short of the standard to state a claim for which relief can be granted under § 1983.

Liability under § 1983 cannot be predicated solely on the operation of *respondeat superior*. *Iqbal*, 556 U.S. 662, 676. Rather, a plaintiff asserting a claim under § 1983 based on a theory of responsibility "must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well." *Dodds v. Richardson*, 614 F.3d 1185, 1198 (10th Cir. 2010) (citing *Iqbal*, 556 U.S. at 1198). The plaintiff must allege "a deliberate, intentional act by the supervisor to violate constitutional rights." *Jenkins v. Wood*, 81 F.3d 988, 994-995 (10th Cir. 1996) (quoting *Woodward v. City of Worland*, 977 F.2d 1392, 1399 (10th Cir. 1992)). Specifically, a plaintiff must first allege a constitutional violation by the supervisor's subordinate. *Rachel v. Troutt*, 718 Fed. Appx. 642, 646 (10th Cir. 2017). Then the plaintiff must show that an "affirmative link" exists between the constitutional deprivation and the supervisor, based on either the supervisor's personal participation or his failure to supervise. *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996) (internal citation omitted). In the context of carceral training programs, the Tenth Circuit has ruled that

> "[i]t is not enough, however, for [plaintiff] to show that there were general deficiencies in the county's training program for jailers. Rather, he must identify a specific deficiency in the county's training program closely related to his ultimate injury, and must prove that

>   the deficiency in training actually caused his jailer to act with
>   deliberate indifference to his safety."

*Lopez v. LeMaster*, 172 F.3d 756, 760 (10th Cir. 1999) (citing *City of Canton v. Harris*, 489 U.S. 378, 391).

As has previously been noted, the Amended Complaint alleges that severe staffing shortages forced correctional officers to work significant overtime and law enforcement officers with no corrections experience or training were being used to fill gaps in staffing at the prison. (ECF No. 14, at 4.) Plaintiff further alleges that "reports of assault began increasing shortly after the new facility opened, some of which required hospitalizations of inmates and/or corrections officers." *Id*. at 4-5. Plaintiff alleges that "UDOC staff" knew that on "at least two known occasions during the early half of November 2022, cell doors on the lower tier were popped open by guards when upper tier cells were standing open." (ECF no. 14, at 5-6). Officer McClure reported that the assault happened after he opened the lower tier doors instead of the upper tier doors because he was unfamiliar with the "operations and procedures of the facility." *Id*. at 7.

Plaintiff alleges that Defendants Powell and Nielson "were directly responsible for the hiring, training and supervision of the correctional officers charged with keeping Mr. Miljkovic safe." *Id*. at 5-8. Plaintiff alleges that these Defendants knew or should have known of the inevitable danger to Plaintiff "in light of the understaffing, lack of training, previous assaults, previous improper cell door opening and the obvious danger when opening the gang members doors while modified monitor inmates were visibly and clearly vulnerable to an attack." *Id*.

Plaintiff's allegations against Defendants Powell and Nielson fail to adequately plead a constitutional violation by a subordinate, the first requirement for § 1983 claims rooted in supervisory liability. Plaintiff only supplies details about a single incident – the assault on Plaintiff allegedly precipitated by Officer McClure improperly opening the lower tier doors. Plaintiff's

claims against Officer McClure support only a claim of negligence and thus fall short of a constitutional violation. Plaintiff's allegations pertaining to the unnamed corrections officers who vacated the area prior to the attack lack sufficient detail to lay out a constitutional violation. Plaintiff cannot adequately plead a constitutional violation against Defendants Powell and Nielson without adequately pleading a constitutional violation by a subordinate.

But even if Plaintiff had pled a constitutional violation by a subordinate, Plaintiff still fails to articulate an affirmative link to Defendants Powell and Nielson. Plaintiff alleges that Defendants "oversaw, supervised, and were directly responsible for the hiring, training and supervision of the correctional officers charged with keeping Mr. Miljkovic safe." (ECF No. 14, at 7.) Plaintiff further alleges that Defendants Powell and Nielson "were directly involved in promulgating policies surrounding the safety of modified monitor prisoners, especially those who worked at jobs requiring their presence in the common areas of the maximum security unit." *Id*. But merely alleging Defendants supervisory role is not enough. *See City of Canton v. Harris*, 489 U.S. at 391 ("[A]dequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable."). Furthermore, Plaintiff's allegations against Defendants Powell and Neilson fail to identify specifically what alleged failures are attributable to which Defendant. *See Robbins*, 519 F.3d at 1249-50 ("[I]t is particularly important … that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her.")

Plaintiff has not identified "a deliberate, intentional act by the supervisor to violate constitutional rights." *Id*. at 994-995 (quoting *Woodward v. City of Worland*, 977 F.2d 1392. To prove a constitutional violation resulting from failure to train, Plaintiff must "identify a specific deficiency in the training program closely related to his ultimate injury, and must prove that the

deficiency in training actually caused his jailer to act with deliberate indifference to his safety." *Lopez v. LeMaster*, 172 F.3d at 760. The Amended Complaint fails to allege a "specific deficiency" in the training program that actually caused Officer McClure to open wrong doors on the night of the assault. *See Lopez v. LeMaster*, 172 F.3d at 760. Nor does Plaintiff provide enough detail to establish a connection between Defendants Powell and Nielson and the unnamed correctional officers being absent from the scene of the assault or failing to stop the assault sooner.

Plaintiff's Response to the Motion to Dismiss argues that Officer McClure's post-incident report supplies a factual basis for the allegations that Defendants Powell and Nielson knew that the corrections officers were inadequately trained to protect inmate safety. Officer McClure's post-incident report states that that "this was the first shift I have ever worked in the (redacted) [sic] Facility and was only beginning the process of familiarizing [himself] with the section operations and procedures." (ECF No. 14, at 7.) Even viewed in the light most favorable to Plaintiff, his explanation does not support the conclusion that Defendants Powell and Nielson were aware that "the officer at the control desk had NO training on how to operate the cell doors, which would support a claim that the supervisors' complete absence of training of the guards would clearly lead to constitutional violations of inmate safety." *See* ECF No 19, at 9. Officer McClure's statement that he "was in the beginning of familiarizing himself with the section operations and procedures" is not tantamount to an allegation that Defendants Powell and Nielson had provided no training on the operation of the cell doors.

Finally, Plaintiff alleges that Defendants Powell and Nielson "knew or should have known of the inevitable danger to the modified monitor inmates such as Mr. Miljkovic in light of the understaffing, lack of training, previous assaults, previous improper cell door opening and the obvious danger when opening the gang members [sic] doors while modified monitor inmates were

visibly and clearly vulnerable to an attack." (ECF No. 14, at 7.) Even assuming this to be true, the allegation that Defendants "should have known" is insufficient to establish deliberate indifference. *See Farmer,* at 838 ("an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause of commendation, cannot under [Supreme Court] cases be condemned as the infliction of punishment.").

Plaintiff's allegations do not support the inference that either Warden Powell or Executive Director Nielson had an affirmative link to a constitutional violation or acted with deliberate indifference to Plaintiff's right to be protected from violence at the hands of other inmates.

## V.  ORDER

Defendants' Motion to Dismiss the Amended Complaint is GRANTED.

**IT IS ORDERED** that the Amended Complaint (ECF No. 14) is **DISMISSED WITH PREJUDICE**.

DATED September 26, 2024.

BY THE COURT:

JUDGE JILL PARRISH
United States District Court